# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-05208 MMM (JWJx) | Date | November 5, 2007 |
|---|---|---|---|

| Title | *Pollution Denim & Co. v. Pollution Clothing Co., et al.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW |
|---|---|

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** Order Granting Defendants' Application for Damages Under the Temporary Restraining Order Bond

On August 10, 2007, plaintiff Pollution Denim & Co. commenced a trademark infringement action against Pollution Clothing Co., its president Jordan Wunder, and certain retailer and fictitious defendants. The same day, plaintiff moved for, and the court issued, a temporary restraining order and order to show cause why a preliminary injunction should not issue. The court directed that the TRO would take effect upon the posting of a $10,000 bond.

On September 7, 2007, the court denied plaintiff's request for a preliminary injunction and gave defendants twenty days to file an application requesting an award of damages incurred due to the court's entry of the TRO. Wunder filed an application for an award of damages under the TRO bond on September 27, 2007. Pollution Clothing LLC joined in the motion on October 5, 2007.

## I. FACTUAL & PROCEDURAL BACKGROUND

Jordan Wunder is the founder, president, and sole employee of Pollution Clothing, LLC, an Oklahoma limited liability company that he founded in September 2005.[1] Wunder began to design

---

[1] Declaration of Jordan S. Wunder in Support of Application for an Award of Damages Under the TRO Bond ("Wunder Damages Decl."), ¶ 1.

clothing bearing the "Pollution Clothing" mark in February 2005.[2] Plaintiff Pollution Denim & Co. was incorporated in California in November 2006.[3]

On November 9, 2006, plaintiff sent defendants a cease and desist letter.[4] In the letter, plaintiff recognized that defendants had registered the "Pollution Clothing" mark in Oklahoma and had rights to use the mark in that market. It asserted, however, that use of the "Pollution Clothing" mark outside Oklahoma infringed plaintiff's "Pollution Denim & Co." mark.[5] Plaintiff represented that it had "obtained its federal trademark [from] the United States Patent and Trademark Office [("USPTO")] in June of 2006."[6] The letter demanded that defendants "cease and desist all uses of the trademark 'Pollution' outside the market of Oklahoma."[7]

On December 11, 2006, defendants answered plaintiff's November 9, 2006 cease and desist letter.[8] Defendants objected to plaintiff's demand that they cease using the "Pollution Clothing" mark. They asserted that plaintiff had merely filed an application to register the "Pollution Denim & Co." mark with the USPTO, that the application was filed on an intent to use basis, and that defendants believed they were the senior users of the "Pollution Clothing" mark.[9] As a consequence, defendants demanded that plaintiff abandon any plans to use the "Pollution Denim" mark in commerce and voluntarily withdraw its trademark application.[10]

The same day that defendants sent their response to the November 9, 2006 cease and desist letter,

---

[2]Declaration of Jordan S. Wunder in Support of Response to Plaintiff's Application for Preliminary Injunction and Order to Show Cause ("Wunder Prelim. Inj. Decl."), ¶ 1.

[3]Declaration of Allen Dahan in Support of Application for Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, and Order Restraining the Transfer of Assets ("Dahan Decl."), ¶ 1. While Dahan represents that the company's "inception" occurred in "early 1995," the court takes judicial notice (see FED.R.EVID. 201) of online records maintained by the Secretary of State indicating that the company was not incorporated until November 2006.

[4]Declaration of Stephen Doniger in Support of Application for Temporary Restraining Order ("Doniger Decl."), Exh. 1.

[5]Id.

[6]Id.

[7]Id.

[8]Wunder Prelim. Inj. Decl., Exh. G.

[9]Id.

[10]Id.

plaintiff's counsel sent a second cease and desist letter to defendants.[11]  Plaintiff reiterated its demand that defendants cease using the "Pollution Clothing" mark.[12]  In addition, it noted that defendants had registered for the February 2007 "POOL Tradeshow" in Las Vegas, and asserted that it would "not allow [Pollution Clothing] to cause consumer confusion by using the name 'Pollution' [at the trade show] in violation of [plaintiff's] federal trademark."[13]  Despite this threat, plaintiff did not commence this action until August 10, 2007, shortly before the *August* 2007 Pool trade show began.[14]

On August 10, 2007, the court issued a temporary restraining order, effective upon personal service on defendants and the posting of a $10,000 bond as security for the payment of any damages defendants might be entitled to recover as a result of the entry of the TRO.  In issuing the TRO, the court restrained defendant from, among other things, "attending any trade shows under the name 'Pollution' or any other similar name, including[ ] [but] not limited to the Pool Trade Show scheduled for August 2007 in Las Vegas."[15]  Defendants did not promote or sell Pollution Clothing at the August 2007 POOL trade show, although Wunder did attend to promote a new clothing company, Dead Cities.[16]  On September 7, 2007, the court denied plaintiff's request for a preliminary injunction on the grounds that plaintiff had failed to show a likelihood of success on the merits because it did not demonstrate that it had a protectible ownership interest in the "Pollution Denim & Co" mark.  Consequently, the court dissolved the TRO.

As a result of the TRO's issuance, defendants allege that they were "prevented from selling, marketing, or promoting any Pollution Clothing apparel at the August 2007 POOL trade show held this year from August 27 to August 29, 2007, which was the direct cause of substantial lost sales."[17]  Defendants request that the bond be executed in their favor.

---

[11]Doniger Decl., Exh. 4.

[12]*Id.*

[13]*Id.*  Defendants assert that "POOL is an independent trade show for emerging apparel designers and is attended by thousands of owners of boutiques and specialty shops from around the country and the globe."  (Wunder Damages Decl., ¶ 1).

[14]Dahan Decl., ¶ 11.

[15]Temporary Restraining Order, Order to Show Cause for Preliminary Injunction, Order Restraining the Transfer of Assets, CV 07-5208 MMM JWJx, Aug. 10, 2007, at 2.

[16]Supplemental Declaration of Jordan Wunder in Support of Application for Damages Under the Temporary Restraining Order Bond ("Wunder Supp. Decl."), ¶¶ 2, 8.

[17]Notice and Application of Defendant Jordan Scott Wunder for an Award of Damages Under the Temporary Restraining Order Bond ("Defs.' App.") at 2.

## II.  DISCUSSION

To state a cause of action for recovery on a temporary restraining order bond posted pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, a party must plead the: "(1) existence of the bond; (2) wrongful issuance of the restraining order; and (3) damage to the restrained party resulting from the restraining order."  *Qualcomm, Inc.* v. *Motorola, Inc.* 185 F.R.D.285, 287 (S.D. Cal. 1999) (citing *Buddy Systems, Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1169 n. 10 (9th Cir. 1976), cert. denied, 431 U.S. 903 (1977)).

### A.  Existence of the Bond

Rule 65(c) provides in relevant part: "No restraining order . . . shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  FED.R.CIV.PROC. 65(c).  "The district court is afforded wide discretion in setting the amount of the bond."  *Connecticut General Life Ins. Co v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citing *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999)).  Such discretion is warranted because the "district court is in a far better position to determine the amount and appropriateness of the security required under Rule 65."  *Save Our Sonoran, Inc. v. Flowers* 408 F.3d 1113, 1126 (9th Cir. 2005) (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237  (9th Cir. 1999)).

Plaintiff posted a $10,000 bond as surety at the court's direction.  Neither party disputes the existence of the bond.

### B.  Wrongful Restraint by the TRO

In *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.* 16 F.3d 1032 (9th Cir. 1994), the Ninth Circuit held that a party has been wrongfully restrained,[18] "within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing."  *Nintendo*,16 F.3d at 1033 (citing *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 910 F.2d 1049, 1054 (2d Cir. 1990) ("A party has been 'wrongfully enjoined' under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act")).  In the context of a TRO, "a party is 'wrongfully restrained' when a contested TRO is dissolved because the party seeking the preliminary injunction fails to carry its burden at the preliminary injunction hearing."  *Qualcomm, Inc.*, 185 F.R.D. at 287.

The TRO issued by the court was in effect during the August POOL trade show in Las Vegas,

---

[18]A party restricted by a TRO that is later dissolved is "wrongfully restrained."  Cf. *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.* 16 F.3d 1032, 1036 n. 3 (9th Cir. 1994) ("Because this case involves a preliminary injunction rather than a temporary restraining order, we use the term 'wrongfully enjoined' rather than 'wrongfully restrained'").

4

which is "one of the biggest trade shows of the year."[19] Defendants allege – and plaintiff does not dispute – that as a consequence of the restraining order, "Mr. Wunder was prevented from selling, marketing, or promoting any Pollution Clothing apparel at the August 2007 POOL trade show."[20] By the time the court fully examined the merits of plaintiff's request for preliminary injunction and denied the motion, the Las Vegas trade show was over. The fact that the motion for preliminary injunction was not granted indicates that defendants had a right to attend the trade show using the "Pollution Clothing" mark, and that they were wrongfully restrained due to issuance of the TRO.

### C.    Damage to the Restrained Party Resulting from the TRO

"Since a preliminary injunction may be granted on a mere probability of success on the merits, generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully." *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (citing FED.R.CIV.PROC. 65(c)). The Ninth Circuit has held that "the limit a party can recover for a wrongful injunction, both against the surety and the plaintiff, is the amount of the bond." *Matek v. Murat*, 862 F. 2d 720, 733 (9th Cir. 1988)(citing *Buddy Systems, Inc.*, 545 F.2d at 1168), disapproved on other grounds, *Koch v. Hankins*, 928 F.2d 1471 (9th Cir. 1991).

"[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." *Nintendo*,16 F.3d at 1036-37 (citing *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1992) (a "defendant injured by a wrongfully issued preliminary injunction is presumptively entitled to recovery on the injunction bond")). *Nintendo* involved an appeal by Nintendo of America, Inc., a manufacturer of home video game systems, from the execution of a $15 million bond posted as security for a preliminary injunction it obtained against Galoob, another video game manufacturer. *Id.* at 1034. Under the preliminary injunction, Galoob was prohibited from selling a new product that allegedly infringed Nintendo's intellectual property rights. *Id.* After the preliminary injunction had been in effect for approximately one year, the case went to trial and Galoob prevailed. *Id.* The district court awarded the full amount of the $15 million bond to Galoob after finding that the injunction cost it at least $15 million in damages. *Id.* at 1033.

The Ninth Circuit affirmed the award, citing the rebuttable presumption in favor of the bond's execution. *Id.* at 1036. It determined that such a presumption was warranted for several reasons. First, "[b]y adhering to this standard, the party enjoined will usually recover damages, thus discouraging parties from requesting injunctions based on tenuous legal grounds." *Id.* at 1037 (citing *Coyne-Delaney Co. v. Capital Dev. Bd.*, 717 F.2d 385, 392 (7th Cir. 1983) (". . . [this test] discourages the seeking of preliminary injunctions on flimsy (though not necessarily frivolous) grounds")). Second, "a presumption that damages will be awarded from the bond assures district court judges that defendants

---

[19]Defs.' App. at 2.

[20]*Id.*

will receive compensation for their damages in cases where it is later determined a party was wrongfully enjoined." *Id.* (citing Note, Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c), 99 HARV.L.REV. 828, 838 n. 36 (1986)).  Third, "demands on judicial resources may be relieved to some extent, because a defendant who can recover damages against a preliminary injunction bond will be less likely to file a separate malicious prosecution action." *Id.* (citing Note, Interlocutory Injunctions and the Injunction Bond, 73 HARV.L.REV. 333 (1959)).  Finally, "this standard provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond." *Id.*

In support of their claim for damages, defendants proffer Pollution Clothing sales information related to all prior occasions on which they attended POOL trade shows.[21]  Defendants contend that Pollution Clothing had sales of $6,039.47 in connection with the February 2006 POOL trade show; sales of $13,959.25 as a result of the August 2006 POOL trade show; and sales of $25,211.96 as a result of the February 2007 POOL trade show.[22]  Based on an alleged average show-to-show increase in sales and profits of 137%, defendants argue that the projected sales as a result of the August 2007 POOL trade show would have been $27,603.[23]

Plaintiff argues that defendants' application is "purely speculative and fanciful."[24]  It contends that defendants should not be permitted to claim damages for subsequent sales that occur in the time period following the week of the actual trade show, because "damages under an injunction bond are limited to those actually and proximately resulting from the effect of the injunction itself."[25]  Moreover, plaintiff contends that "uncertain or speculative damages cannot be the basis of a damage recovery."[26]

The very nature of lost profits, however, requires that they be estimated, as the profits themselves were not earned due to the acts of the opposing party.  *Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co.*, 153 F.3d 938, 947 (9th Cir. 1998).  Courts are permitted to award lost profits suffered as a result of a TRO or preliminary injunction. See *Nintendo*, 16 F.3d 1036-1037.  In arguing that defendants have not shown actual damages resulting from Pollution Clothing's absence at the August 2007 POOL trade show, plaintiff cites the sales data of Wunder's new company, Dead Cities, to show that defendants nonetheless had successful sales at the show.[27]  Whether or not Dead Cities had successful sales at the trade show is irrelevant in assessing whether Pollution Clothing suffered damage, and plaintiff adduces

---

[21]Wunder Damages Decl., ¶¶ 3-5, Exhs. B-F.

[22]*Id.*

[23]See Wunder Supp. Decl., Exh. 2.

[24]Plaintiff's Opposition to Defendant's Application for an Award of Damages Under the Temporary Restraining Order Bond ("Pl.'s Opp.") at 1.

[25]*Id.* at 2.

[26]*Id.* at 3.

[27]*Id.* at 2-4.

no evidence that it did not.

Defendants assert that the lost profits they claim flow not only from the lost sales opportunity at the August 2007 POOL show, but "through follow-up orders from those retailers to restock supplies as they are sold, or through orders from retailers who speak with an exhibitor, view samples, obtain a catalog, and then place an order sometime after the show."[28] By not being able to sell or display Pollution Clothing at the August 2007 POOL trade show due to the TRO, defendants lost not only the opportunity to make actual sales at the show, but also the opportunity to meet and connect with new customers and secure ongoing business from them. The court thus concludes that defendants have adequately demonstrated that they were damaged by being wrongfully restrained under the TRO.

Because plaintiff's arguments against damages are conclusory and unsupported, the court also concludes that it has failed to rebut the presumption that the bond should be executed in defendants' favor. Accordingly, the court orders that defendants recover damages of $10,000 under the TRO bond.

### III.  CONCLUSION

For the reasons stated, the court orders that the temporary restraining order bond of $10,000 be executed in defendants' favor.

---

[28]Defendants' Reply in Support of Application for Damages Under the Temporary Restraining Order Bond ("Defs.' Reply") at 2; Wunder Supp. Decl., ¶ 3.